IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | 1:20-CR-156-RP |
| CYRIL LARTIGUE *a/k/a* CYRIL LAURENCE LARTIGUE, | § § § § | |
| Defendant. | § § § | |

**ORDER**

Before the Court is Defendant Cyril Lartigue a/k/a Cyril Laurence Lartigue's ("Lartigue") motion to suppress, (Dkt. 43), and motion to quash the indictment, (Dkt. 44). The government filed responses, (Dkts. 50, 51), and the Court held a hearing on the motions on June 1, 2021, (Dkt. 54). For the reasons discussed below, the Court will grant in part and deny in part Lartigue's motion to suppress and deny Lartigue's motion to quash the indictment.

## I.   BACKGROUND

Lartigue was arrested on May 30, 2020 during an anti-police violence protest outside of the Austin Police Department ("APD"). (Mot. Suppress, Dkt. 43). Officers operating an APD High Activity Location Observation ("HALO") camera observed Lartigue squatting down behind a portable toilet in the parking lot directly adjacent to the Austin Municipal Court entrance. (Alatorre Aff., Dkt. 1-1, at 1–5). The officers saw Lartigue open a glass bottle, empty out its contents, and then place a small piece of cloth into the bottle. (*Id.* at 1–2). Lartigue then removed the cloth from the bottle and began squirting the contents of a rectangular container into the original bottle, saturated the cloth with the contents of the rectangular container, and then put the cloth back into the bottle (*Id.*). At this time, HALO operators alerted officers on the ground that Lartigue appeared to be making a Molotov cocktail. (Hr'g., Dkt. 54). When law enforcement began approaching the

1

area, Lartigue placed the bottle in his backpack, left the backpack, and left the area. (Dkt. 1-1, at 4). Lartigue later returned to the same spot to retrieve his backpack, and then brought the backpack to a grassy area near the IH-35 South frontage road. (*Id.*). Lartigue then entered a portable toilet near the east frontage of IH-35, where officers descended upon him, and ordered him to exit the portable toilet. (*Id.* at 5). Officers then arrested Lartigue and searched his backpack, which he had left in the portable toilet. (*Id.*). In the backpack, officers found "a yellow safety hard-hat, a Zippo-brand lighter with the name 'Cyril' engraved, a bottled labeled "Zippo Lighter Fluid," a blue/white/grey checkered/plaid long-sleeve shirt and several small sections of rags/T-shirt(s)/light fabric/clothing material." (*Id.*; Image of Items on Lartigue, Dkt. 56-3). The original bottle shown in the HALO video "was not found" in Laritgue's backpack, though an officer later admitted that he disposed of two glass bottles he found within the backpack because he did not realize they were evidence and considered them to be perishables. (Image of Items on Lartigue, Dkt. 56-3; Hr'g., Dkt. 54).

That same day, May 30, 2021, Lartigue was interrogated by an arson investigator, and charged with the state offense of Possession or Manufacture of a Prohibited Weapon, a Third Degree Felony. (*Id.*; Mot. Suppress, Dkt. 43, at 3). Lartigue was appointed an attorney on June 1, 2020 to represent him on these state charges, and the following day Lartigue hired his own attorney and was released on bond. (Dkt. 43, at 3; Surety Bond, Dkt. 42-2). The state charge against Lartigue was later dropped in favor of the instant federal charge. (Compl., Dkt. 1; Hr'g., Dkt. 54). Indeed, on June 7, 2020, Lartigue was charged with Possession of an Unregistered Destructive Device in violation of Title 26 USC 5845(f)(3). (Compl., Dkt. 1). The next day, Lartigue was interrogated by two special agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (Dkt. 43, at 3; ATF Interrogation Transcript, Dkt. 43-3; ATF Interrogation Recording, Dkt. 51, at 26).

The pending motion to suppress challenges APD's warrantless arrest of Lartigue and search of his backpack, and argues that the May 30 and June 8 interrogations violated Lartigue's Fourth, Fifth

and Sixth Amendment rights. (Mot. Suppress, Dkt. 43). Lartigue maintains his motion to quash the indictment only to the extent that the superseding indictment fails to specify "*how* Mr. Lartigue intended the combination of parts for use in converting any device into a destructive device." (Dkt. 44, at 9).

## II.     LEGAL STANDARDS

### a. Motion to Dismiss Indictment

Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure supplies the procedural means for a criminal defendant to challenge the sufficiency of an indictment. An indictment is a "plain, concise and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). In general, an indictment is sufficient to survive a motion to dismiss "if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and insures that there is no risk of future prosecutions for the same offense." *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir. 1994) (citing *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991)). Rule 52(a) likewise counsels that "[a]ny error, defect, irregularity, or variance" in an indictment should be ignored unless it materially prejudices the defendant. FED. R. CRIM. P. 52(a).

"As a general rule, an indictment which alleges an element of the charged offense merely by reciting the words of the applicable statute is valid so long as the indictment alleges each of the requisite elements of the charged offense." *United States v. Williams*, 679 F.2d 504, 508 (5th Cir.1982). When an indictment is facially valid, courts may not inquire into the sufficiency or competency of the evidence. *United States v. Calandra*, 414 U.S. 338, 344–45 (1974); *see also United States v. Strouse*, 286

F.3d 767, 771 (5th Cir. 2002) ("After indictment, the judiciary's role in policing the credibility of witnesses before a grand jury is minimal.")

### b. Fourth Amendment

Under the Fourth Amendment, warrantless searches are presumptively unreasonable unless "the person consents, or unless probable cause and exigent circumstances justify the search." *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001). To determine whether probable cause exists in a particular situation, a court must look to the "totality of the circumstances." *United States v. Newman*, 472 F.3d 233, 236 (5th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The exigent circumstances exception "requires a court to examine whether an emergency justified a warrantless search in each particular case." *Riley v. California*, 573 U.S. 373, 402 (2014). In applying the exception, an officer must have had an "objectively reasonable basis" for her concern for public safety and must have acted reasonably. *United States v. Toussaint*, 838 F.3d 503, 509 (5th Cir. 2016).

To determine whether exigent circumstances exist, the court "should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent [wo]men standing in the shoes of the officers." *United States v. Rodea,* 102 F.3d 1401, 1405 (5th Cir. 1996) (citing *United States v. Riley*, 968 F.2d 422, 425 (5th Cir. 1992)). As long as the court finds a basis for exigent circumstances, the court does "not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *United States v. De Jesus-Batres,* 410 F.3d 154, 159 (5th Cir. 2005) (citing *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997) (en banc)). Exigent circumstances generally exist when there is a risk of injury to law enforcement officials or the public or a risk that evidence will be destroyed. *Blount*, 123 F.3d at 837, 839. When a police officer acts without a warrant, the

government bears the burden of proving the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

### c. Fifth and Sixth Amendments

Under the Fifth and Sixth Amendments of the United States Constitution, after invoking her right to counsel by requesting assistance of counsel, any waiver of Sixth Amendment rights by the defendant in a discussion initiated by the police is inadmissible in the prosecution's case-in-chief. *See Michigan v. Harvey*, 494 U.S. 344, 349 (1990). If a defendant wishes to invoke her Fifth Amendment right, she "need only say as much when [s]he is first approached and given the Miranda warnings" and "not only must the immediate contact end, but 'badgering' by later requests is prohibited." *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009). A defendant must articulate her desire to have counsel present "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994) ("[T]he suspect must unambiguously request counsel.").

The Sixth Amendment prohibits admission of statements deliberately elicited by the government from the defendant after adversary criminal proceedings have begun, unless the defendant's counsel is present or the defendant waives his right to counsel." *United States v. Gunn*, 369 F.3d 1229, 1237 (11th Cir. 2004) (citing *Massiah v. United States*, 377 U.S. 201 (1964)). A defendant may waive the right to counsel under the Sixth Amendment so long as the waiver is voluntary, knowing, and intelligent. *Montejo*, 556 U.S. at 786. It is not necessary that a defendant be represented by counsel at the time he chooses to waive the Sixth Amendment right. *Id.* A waiver is generally considered

knowing and intelligent where the defendant was apprised of his *Miranda* rights, which include the right to have counsel present during interrogation, and agrees to waive those rights. *Id.*

### III. DISCUSSION

#### a. Motion to Dismiss Indictment

Lartigue moves to dismiss the indictment insofar as the superseding indictment fails to cure the defects identified in his motion. (Mot. Quash, Dkt. 44; Hr'g., Dkt. 54). To that end, Lartigue argues that the superseding indictment fails to allege "how the combination of parts he is alleged to have possessed were designed or redesigned for use a weapon" since Lartigue could not use the Molotov cocktail without lighting or throwing it. (Dkt. 44, at 10; Hr'g. Dkt. 54). The government responds that the superseding indictment is not deficient because it places Lartigue on notice as to how the government alleges Lartigue intended to use the combination of parts to produce a weapon covered by the statute. (Hr'g., Dkt. 54; Superseding Indictment, Dkt. 45). The Court agrees. Under *United States v. Hammond*, "a 'destructive device' [is] within the meaning the statute if, and only if, it was designed for use as a weapon." 371 F.3d 776, 780 (11th Cir. 2004). Here, the superseding indictment alleges that Lartigue "intended" to use a "combination of one or more bottles, a combustible fluid, one or more pieces of cloth, and a lighter" to create "a Molotov cocktail or incendiary explosive." (Superseding Indictment, Dkt. 45).

Although Lartigue contends that the indictment fails to specify how the items identified in the superseding indictment "would or could be used as a weapon, especially without being lit or thrown," the Court finds that the "plain and sensible meaning of the language used" in the superseding indictment provides Lartigue with sufficient notice as to how he intended to use the combination of items to create destructive device. *United States v. Haas*, 583 F.2d 216 (5th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Furthermore, the Court declines Lartigue's invitation to hold the government to heightened standard by requiring it to allege with specificity . . . how the combination

6

of parts he is alleged to have possessed were designed or redesigned for use a weapon." (Dkt 44, at 10); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994) ("An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted."). Lartigue's motion to dismiss the indictment is thus denied.

### b. Motion to Suppress

Lartigue moves to suppress the evidence collected in his backpack and the statements he made to APD officers and ATF special agents on May 30 and June 8, 2020. (Mot. Suppress, Dkt. 43). Lartigue first argues that the evidence seized in his backpack must be suppressed because (1) the search of his backpack was not a valid *Terry* search; (2) exigent circumstances did not warrant a search of his backpack; and (3) the search was not a valid search incident to arrest because APD did not have probable cause to arrest Lartigue and the backpack was not even accessible to him at the time it was searched since he was "immobilized on the ground at gunpoint." (Dkt. 43, at 8). The government responds that its warrantless search of Lartigue's backpack was justified by exigent circumstances, or as a lawful search incident to arrest, and in any event, would have been discovered through an inventory search following his arrest. (Dkt. 51, 14–21).

Lartigue first challenges his arrest, arguing generally that APD lacked probable cause to arrest him. (Dkt. 43, at 7). The government responds that "there was more than sufficient probable cause for Defendant's arrest" because "officers who responded to the scene were told that Defendant was believed to be in possession of an explosive device near a large and excited crowd in the vicinity of an interstate highway." (Dkt. 51, at 16, 22). A warrantless arrest must be based on probable cause. *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). Probable cause exists when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* Here, at the moment of his arrest, officers understood that Lartigue has been observed constructing

7

a Molotov cocktail by both HALO camera and air support officers, and likely had the weapon in his possession in violation of state law. (Dkt. 51, at 10–12; Hr'g., Dkt. 54; HALO Footage, Dkt. 56-2; Demaio Aff., Dkt. 43-4, at 1). While Lartigue argues that APD did not have probable cause to arrest him because they "had zero facts to support that Mr. Lartigue was in possession of an *unregistered* molotov cocktail," testimony at the suppression hearing revealed that it is extremely rare for Molotov cocktails to be registered with the National Firearms Registration and Transfer Record. (Dkt. 43, at 7; Hr'g., Dkt. 54). Indeed, Austin Fire Department arson specialist Paul Demaio ("Demaio") has never encountered a registered Molotov cocktail in of his 15 cases dealing with them; and has in fact only heard of one instance of a Molotov cocktail having been registered with the National Firearms Registration and Transfer Record. (Hr'g., Dkt. 54). Furthermore, given that APD witnessed Lartigue constructing the Molotov cocktail, and then fleeing as officers approached, Lartigue would not have had an opportunity to register the weapon. (*Id.*). As such, considering the totality of such circumstances, a prudent person would have believed that there was a fair probability that Lartigue had committed a crime at the time of his arrest. *Devenpeck v. Alford*, 543 U.S. 146, 151 (2004); *Camacho v. United States*, 116 F. Supp. 3d 762, 787 (W.D. Tex. 2015).

The Court finds that APD's warrantless search of Lartigue's backpack was justified because probable cause supported the search and "exigent circumstances" existed at the time of the search. *See United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). First, probable cause supported the search of the backpack because APD officers witnessed Lartigue attempting to assemble a Molotov cocktail on both HALO cameras and air support thermal imaging. (DeMaio Aff., Dkt. 43-4, at 1; HALO Images, Dkt. 56-5, at 1–4; Air Support Video, Dkt. 56-2). Furthermore, as officers approached Lartigue, he abandoned certain items he had used in assembling the Molotov cocktail and fled the area. (HALO Video, Dkt. 56-2); *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (flight from police is "among the relevant contextual considerations in the probable cause

analysis"). Lartigue then returned to the same area to collect the items he had left on the ground. (HALO Images, Dkt. 56-4, at 6). Taken together, the facts known to the APD officers at the time they arrested Lartigue amounted to a "fair probability" that his backpack contained "contraband or evidence of a crime." *Newman*, 472 F.3d at 237.

Second, exigent circumstances warranted the search of the backpack. Lartigue argues that because a Molotov cocktail requires a heat source to become an incendiary device, the contents of his bag presented no danger to the officers such as to warrant the warrantless search of his backpack. (Hr'g, Dkt. 54; Mem. Support, Dkt. 57, at 5). While the Court agrees that an unlit Molotov cocktail would pose little danger under ordinary circumstances, here intermittent fires and fireworks among the protest made the scene chaotic. (Hr'g., Dkt. 54; HALO and Thermal Stills, Dkt. 56-4). Indeed, AFD arson specialist Demaio testified that he did not believe it would have been safe to transport the backpack without first searching it given the prevalence of fires in the area. (Hr'g., Dkt. 54). As such, the potential presence of a Molotov cocktail in Lartigue's backpack presented an "immediate safety risk to officers and others" that constituted exigent circumstances warranting the search of the backpack before transporting it. *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

Lartigue next moves to suppress statements he made during the May 30 and June 8 interrogations as taken in violation of his Fourth, Fifth, and Sixth Amendment rights. Lartigue first moves to suppress the statements he made during the May 30 interrogation relating to the contents of his backpack, arguing that his statements were taken in violation of his Fourth Amendment rights. (Dkt. 43, at 9). Having found that Largtigue's arrest was supported by probable cause and that the search of his backpack was justified under the exigent circumstance exception to the warrant requirement, the Court rejects Lartigue's contention that his "statements made during the first interrogation must be suppressed as fruits of the initial illegal search and arrest." (*Id.*). The Court will

thus limit its analysis of Lartigue's motion to suppress his statements to those he made during the June 8 interrogation.

Lartigue argues that the statements he made during the June 8 interrogation must be suppressed because they were obtained in violation of his Fifth and Sixth Amendment rights. (Dkt. 43, at 9). Relying on *Michigan v. Jackson*, Lartigue argues that any waiver of his right to counsel that occurred after this right attached is invalid. 475 U.S. 625, 629 (1986). Yet as the government points out, *Jackson* was expressly overruled by *Montejo v. Louisiana*, which, contrary to Lartigue's insistence at the hearing, expressly held that "*Michigan v. Jackson* should be and now is overruled" because the Fifth Amendment protections afforded under "the *Miranda-Edwards-Minnick* line of cases" are sufficient to prevent defendants from coerced confessions. 556 U.S. 778 (2009). As such, the Court rejects Lartigue's argument that any waiver of his rights during the June 8 interrogation was presumptively invalid because his right to counsel had attached in his state case.

The government argues that Lartigue also validly waived his Fifth Amendment rights after being read his Miranda warnings twice during the June 8 interrogation. (Dkt. 51, at 23). After being read his Miranda rights for the first time, Lartigue stated "I have a lawyer who is working on this case with me in Travis County—is it possible to get a hold of him to be here now?" and again said "if [my lawyer] could be here now, that would be cool" when ATF Agent Reynaldo Alatorre ("Agent Alatorre") continued with the interrogation. (ATF Interview Audio, Dkt. 51-1). Agent Alatorre then read the Miranda rights again, and Lartigue waived those rights verbally. (*Id.*). The government argues that Lartigue "never clearly invoked his right to counsel," and thus there was no Fifth Amendment violation during the June 8 interrogation. (Dkt. 51, at 24).

The government relies on *United States v. Scurlock*, 52 F.3d 531, 537 (5th Cir. 1995) for the proposition that a defendant's statement that she "needed a lawyer" was not a clear invocation of her right to counsel, yet in that case the defendant had already signed a waiver, admitted to

10

involvement in a criminal scheme, and made the comment after officers told her she would be indicted for that criminal scheme. Similarly, in *United States v. Montes*, 602 F.3d 381, 385 (5th Cir. 2010), which the government cites to support their contention that Lartigue's invocation of counsel was not unequivocal, defendant stated "Maybe I should get an attorney" or "Do I need an attorney?" after he had waived his rights. Here, in contrast, Lartigue asked the officers if they could get his attorney and then again said "it would be cool if he could be here" before waiving his rights. (ATF Interview Audio, Dkt. 51-1). Furthermore, Lartigue's later waiver of his rights and responses to continued questions cannot be used to undermine an earlier unambiguous invocation of the right to counsel. *Smith v. Illinois*, 469 U.S. 91, 100 (1984) (a request for counsel, unequivocal when made, cannot be rendered equivocal by continued questioning).

The Court finds that Lartigue's initial question asking Agent Alatorre if his attorney could "be here now" sufficed to unambiguously invoke his right to counsel, and as such, any statements obtained after this initial invocation were obtained in violation of his Fifth Amendment rights. (ATF Interrogation Transcript Audio, Dkt. 51-1); *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981) (invocation by a suspect of his right to counsel that is ignored by law enforcement officers requires that the suspect's statements made after the request be excluded by the trial court). Although the Fifth Circuit does not appear to have addressed this issue, the Court finds Lartigue's statement to be more in line with case law finding a statement similar to his to be unambiguous than with statements found to be ambiguous. *Compare United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005) ("can I have a lawyer" and "could I get a lawyer" held to be unambiguous requests for counsel), *with Davis*, 512 U.S. at 462 ("maybe I should talk to a lawyer" held ambiguous, and therefore not a request for counsel).

Lartigue's request for his attorney during the June 8 interrogation thus reasonably elicited a present desire to consult with counsel, and courts in our sister Circuits have found this type of

11

question sufficient to properly invoke the Fifth Amendment right to counsel. *Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir. 1991) ("I think I should call my lawyer" sufficient to invoke right to counsel); *Robinson v. Borg*, 918 F.2d 1387, 1390 (9th Cir. 1990) ("I have to get me a good lawyer, man. Can I make a phone call?" held unambiguous request for counsel); *Smith v. Endell,* 860 F.2d 1528, 1529 (9th Cir. 1988) ("Can I talk to a lawyer?" sufficient to invoke right to counsel), *cert. denied*, 498 U.S. 981(1990); *United States v. Hunter*, 708 F.3d 938, 943 (7th Cir. 2013) ("Can you call my attorney?" held to be unambiguous request for counsel). Lartigue's initial request for his attorney thus reflected "an unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002); *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). As such, all statements made by Lartigue during the June 8 interrogation after he invoked his right to counsel must be suppressed.

## IV. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Lartigue's motion to quash, (Dkt. 44), is **DENIED**. **IT IS FURTHER ORDERED** that Lartigue's motion to suppress, (Dkt. 43), is **GRANTED IN PART** and **DENIED IN PART**. Specially, Lartigue's motion is **GRANTED** insofar as his statements made after his invocation of right to counsel during the June 8 interrogation must be suppressed. Lartigue's motion is **DENIED** in all other respects.

**SIGNED** on June 15, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE