UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| **v.** | § § § § | **CAUSE NO. 1:20-CR-00156(1)-RP** |
| **CYRIL LARTIGUE** | § | |

**DEFENDANT'S ADVISORY TO THE COURT:**
<u>**PSR OBJECTION CHECKLIST**</u>

**TO THE HONORABLE ROBERT PITMAN, UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS:**

There are multiple objections to the PSR. Counsel presents the following checklists to summarize and assist in the resolution of the objections.

Respectfully submitted,

**SUMPTER & GONZÁLEZ, L.L.P.**
3011 N. Lamar. Blvd, Ste. 200
Austin, Texas 78705
Telephone: (512) 381-9955
Facsimile: (512) 485-3121

By: */s/ David M. Gonzalez*
David Gonzalez
State Bar No. 24012711
DAVID@SG-LLP.COM

Worth D. Carroll
State Bar No. 24091192
WORTH@SG-LLP.COM

**ATTORNEYS FOR DEFENDANT
CYRIL LARTIGUE**

**CERTIFICATE OF SERVICE**

By my signature below, I do hereby certify that on the 9th day of February 2022, a true and correct copy of the foregoing Defendant's Advisory to the Court was delivered to:

Keith Henneke & Gabe Cohen
United States Attorney's Office
Western District of Texas
816 Congress Ave. #1000
Austin, TX 78701
Keith.Henneke@usdoj.gov
gabriel.cohen@usdoj.gov

*/s/ David M. Gonzalez*
David M. Gonzalez
Worth D. Carroll

**OBJECTION NO. 1**
*Blakely & Booker* Global Objections

**Government/PSR position:**
Both hearsay and suppressed evidence is still admissible at sentencing in support of any enhancement.

The government cites *United States v. Robins*, 978 F.2d 881, 891 (5th Cir. 1992) and *United States v. Butler*, 680 F.2d 1055, 1056 (5th Cir. 1982) to justify the use of illegal seized evidence at sentencing despite the exclusionary rule of the 4th Amendment.

The government cites *United States v. Ramirez*, 271 F.3d 611, 612-13 (5th Cir. 2001) in support of the admissibility of hearsay at sentencing.

**Objections:**

1. **Sixth Amendment violation: Suppressed Evidence.**
    This Court excluded evidence on the basis of Mr. Lartigue's 6th Amendment right to counsel. *Robins* and *Butler* involve 4th Amendment violations.

    The unpublished case of *U.S. v. Youngblood*, 576 Fed.Appx. 403 (5th Cir. 2014) (unpublished) is the most recent opinion on this issue ("As an initial matter, it is settled in this circuit that suppressed evidence may be considered generally when sentencing" citing *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993)). But again, these cases reference 4th Amendment violations.

    Defendant objects to the use of evidence in violation of his Sixth Amendment right to counsel which is a matter of fundamental fairness and not simply a mechanism to deter police misconduct like the exclusionary rule for illegal searches and seizures.

    ☐	Sustained		☐	Overruled

2. **Sixth Amendment Confrontation Clause violation: Hearsay statements.**

    The statements in ¶16 are out of court statements that violate Mr. Lartigue's Sixth Amendment right of confrontation. The *Ramirez* case cited by the government actually carves out an exception for violations of the confrontation clause. Counsel objects under *Lilly v. Virginia*, 527 U.S. 116 (1999) and *Crawford v. Washington*, 541 U.S. 36 (2004).

    ☐	Sustained		☐	Overruled

3. **Sixth Amendment: Facts in PSR not reflected in the jury verdict.**
   The Supreme Court's jurisprudence in *Jones v. United States*, 526 U.S.227 (1999), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakeley v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 2020 (2005) protects the Sixth Amendment right to have the jury find the existence of "any particular fact" that the law makes essential to his punishment. That right is implicated whenever the government seeks to impose a sentence that is not solely based on "facts reflected in the jury verdict or admitted by the defendant."

The Supreme Court in *Booker* explains:

> Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 543 U.S. at 244.

In finding Mr. Lartigue guilty, the jury found the following five elements beyond a reasonable doubt pursuant to the court's charge:

First: That Mr. Lartigue knowingly possessed a firearm;

Second: That this firearm was a destructive device as defined above;

Third: That Mr. Lartigue knew of the characteristics of the destructive device, i.e., that it was a combination of parts that could have been readily assembled to convert a device into an explosive bomb, incendiary bomb, or similar device, i.e., a Molotov cocktail;

Fourth: That this firearm/destructive device could readily have been put in operating condition; and,

Fifth: That this firearm/destructive device was not registered to Mr. Lartigue in the National Firearms Registration and Transfer Record. It does not matter whether Mr. Lartigue knew that the firearm/destructive device was not registered or had to be registered.

The jury did not find that:

- Mr. Lartigue possessed at least three firearms;
- Mr. Lartigue committed any other felony offense; or
- Mr. Lartigue obstructed justice.

Defendant objects to the use of any fact that that results in a higher advisory guideline range that was not determined beyond a reasonable doubt by a jury.

☐   Sustained                ☐   Overruled

### OBJECTION NO. 2
Base Offense Level

**Government/PSR position:**
Appendix A of the Sentencing Guidelines mandates application of §2K2.1.

**Objection:**
Application of §2K1 is more appropriate based upon the facts of this case.

☐   **Sustained**. The Court determines the Base Offense Level is Level 12.
☐   **Overruled**. The Court determines the Base Offense Level is Level 18.

### OBJECTION NO. 3
Three firearm enhancement

**Government/PSR position:**
Because Cyril Lartigue possessed the components for more than one Molotov, combined with his statements, the enhancement applies.

**Objections:**

1. The Specific Offense Characteristics referenced in §2K2.1(b)(1) refer only to firearms – not to the statutory definition of § 5845(f)(3) for a combination of parts.

2. There is no defined amount of liquid that makes a Molotov cocktail. This requires guesswork to determine the number of devices based upon components.

> If all the liquid was poured in one bottle – like the Government's demonstrative at trial – then there is only one device. Otherwise the government can allege – upon speculation alone – that a person had dozens of potential devices based upon any of the components. Defendant objects to this speculation.

3. Defendant objects under *Jones, Apprendi, Ring, Blakeley*, and *Booker* to the use of any fact that that results in a higher advisory guideline range that was not determined beyond a reasonable doubt by a jury.

☐ **Sustained**.
☐ **Overruled**. The Court adds 2 levels to the Base Offense Level.

# OBJECTION NO. 4
Device enhancement

**Government/PSR position:**
The definition of "destructive device" includes a combination of parts.

**Objection:**
The Specific Offense Characteristics referenced in §2k2.1(b)(3)(b) refer only to devices not to components.

☐   **Sustained**.
☐   **Overruled**. The Court adds 2 levels to the Base Offense Level.

# OBJECTION NO. 5
Other felony offense enhancement

**Government/PSR position:**
The possession of the components was "in connection" with Aggravated Assault of a Public Servant with a Deadly Weapon, Aggravated Assault with a Deadly Weapon, Assault of a Public Servant, Arson, or attempt of any of these offenses.

The government cites *United States v. Norman*, 780 F.App'x 13, 16 (4th Cir. 2019) (unpublished) in support.

**Response:**
*Norman* involved a 4-level enhancement for attempted assault with a deadly weapon under the following facts:

> On December 25, 2016, an officer on patrol with the Washington County (NC) Sheriff's Office noticed a disturbance involving a group of people near the courthouse in Plymouth, North Carolina. The officer activated his blue lights and called for backup. As the officer exited his vehicle, one person from the group, later identified as Norman, **began walking toward the officer** then threw an unidentified object into the woods. **The officer, believing the item to be a firearm**, pulled his duty weapon and ordered Norman to raise his hands and lie on the ground. In response, **Norman tried to run into the woods while reaching into his back pocket**. However, he tripped and fell onto his back during his attempted flight. From his position on the ground, **Norman then continued to defy a verbal command to roll onto his stomach and remove his hands from his back pocket**. Because there was a crowd of bystanders, the officer kept his weapon pointed at Norman until backup arrived. **When additional officers arrived, they turned Norman onto his stomach and a loaded .22 caliber pistol fell from his back pocket**. Officers later recovered a magazine with .380 caliber bullets from the woods.

*Id.* (emphasis own).

The Fourth Circuit upheld the enhancement because:

> Norman reached repeatedly toward a firearm as officers attempted to effect a seizure. Norman did not wield the firearm, but his constant reaching into his back pocket, like Barksdale's reaching toward a gun with his outstretched left hand, is certainly an unequivocal appearance of an attempt to commit an assault. In addition, Norman refused to obey police commands and was only subdued when backup arrived and physically rolled him onto his stomach. The officer's actions of repeating verbal commands with his weapon drawn and waiting until backup arrived is sufficient evidence to establish that a reasonable person would be in fear of bodily harm.

*Id*. at 16.

A better case to analyze from the Fifth Circuit involving §2K2.1(b)(6)(B) and aggravated assault is *United States v. Longoria*, 713 Fed.App'x. 327 (5th Cir. 2018) (unpublished). The facts are as follows:

> **Edward Longoria pleaded guilty to possession of a firearm by a convicted felon** in violation of 18 U.S.C. § 922(g), and the district court sentenced him to **30 months of imprisonment**. Longoria challenges the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using a firearm in

connection with another felony offense, specifically aggravated assault. He contends that the district court misunderstood the Texas aggravated assault statute when it considered whether the victims actually feared injury rather than his intent to communicate a threat of injury. Emphasizing the lack of evidence suggesting that he pointed the gun at or in the direction of the victims and citing the absence of a motive, **Longoria asserts that he did not intend to cause bodily injury by firing the gun**.

*Id*. (emphasis own). "The evidence supports the conclusion that Longoria's conduct in pointing the gun in the direction of the victims and firing it exhibited an intent to threaten bodily injury." Because the record plausibly supported a finding that Longoria used a firearm in connection with the felony offense of aggravated assault, there was no clear error stemming from the district court's application of the § 2K2.1(b)(6)(B) enhancement. *Id*.

As the facts in *Longoria* and *Norman* are very different than Lartigue. The four-level enhancement does not apply.

**Objections:**

1. The officers on scene testified at trial. There was no evidence similar to the case in *Norman* where an officer testified he had been assaulted, prevented an attempted assault, or had been placed in fear of bodily harm.

2. Mr. Lartigue was arrested by the Austin Police Department. He could have been charged by the Austin Police Department with any of these offenses. He was not charged because no probable cause existed to charge him with any of the government's preferred crimes. The following chart illustrates the lack of proof or evidence for any felony related to Aggravated Assault:

| **Offense: Aggravated Assault** | |
|---|---|
| A person commits an offense if the person commits assault as defined in Sec. 22.01 and the person:<br><br>(1) causes serious bodily injury to another, including the person's spouse; or<br><br>(2) uses or exhibits a deadly weapon during the commission of the assault. | Lartigue did not intentionally, knowingly, or recklessly causes bodily injury to another [Sec. 22.01] |

| **Attempt** | |
|---|---|
| A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. | There is no act by Lartigue that crosses the "imaginary line" which separates preparatory conduct from an "act that tends to effect the commission of the offense." *See e.g., Flournoy v. State*, 668 S.W.2d 380 (Tex. Crim. App. 1984) (reaching hand through a screen door was an act amounting to more than mere preparation for burglary). |

3. Objection: Speculation.
   Texas courts have repeatedly found the evidence insufficient where a necessary element of the offense could not be found without resorting to speculation. *See, e.g., Williams v. State*, 235 S.W.3d 742, 760–61 (Tex. Crim. App. 2007) (conclusion that defendant was reckless in leaving her children in the care of her boyfriend was based on speculation, where there was no evidence that her boyfriend was an incompetent caretaker or did not know what to do with a burning candle); *Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012) (conclusion that defendant and his brother-in-law decided to kill the victim while driving was based on no evidence and was speculative); *Rabb v. State*, 434 S.W.3d 613, 617 (Tex. Crim. App. 2014) (conclusion that defendant destroyed evidence by swallowing it was based on speculation, where there was no evidence on the status of the bag after he swallowed it); *Queeman v. State*, 520 S.W.3d 616, 625 (conclusion that defendant was excessively speeding was speculative, where trooper did not quantify defendant's speed).

4. By analogy, possession of a firearm in connection with a drug offense does not result in a four-level enhancement. See, e.g. *United States v. Ledesma*, 750 F. App'x 344 (5th Cir. 2018) (unpublished) (possessing methamphetamine alone without proof for trafficking insufficient for 4 level enhancement). Here, there is no evidence that Lartigue committed any assault on any person. Possessing components and taking no action to assault any person is similar to *Ledesma* in that an assault – not possession of components – is the gravamen of the applicability of the enhancement. *See also United States v. Pimpton*, 589 F. App'x 692, 695 (5th Cir. 2014) (unpublished) and *United States v. Jeffries*, 587 F.3d 690, 6983-94 (5th Cir. 2009) ("mere simultaneous possession of a firearm and another item—possession of which constitutes a separate offense—is not enough to satisfy the "in connection with" requirement under U.S.S.G. § 2k2.1(b)(6)(B).")

5. Defendant objects under *Jones, Apprendi, Ring, Blakeley*, and *Booker* to the use of any fact that that results in a higher advisory guideline range that was not determined beyond a reasonable doubt by a jury.

☐ **Sustained**.
☐ **Overruled**. The Court adds 4 levels to the Base Offense Level.

---

# OBJECTION NO. 6
Obstruction of justice enhancement

**Government/PSR position:**
Deleting social media messages is obstruction of justice, citing *United States v. Alexander*, 602 F.3d 639 (5th Cir. 2010).

**Response:**
First, counsel concedes that *Alexander* refutes Defendant's objection regarding the timing of a state versus a federal investigation.

Second, *Alexander* is not a social media case; *Alexander* involves obstruction by reaching out to third parties to get rid of evidence:

> Austin Police Department ("APD") officers arrested Alexander after finding cocaine base in his car during a traffic stop. While in jail, Alexander called his father and directed him to remove three firearms from his bedroom and deliver at least one of them to Trinity Duke Smith, a known drug dealer.

*Id.* at 641. As of this writing, counsel is unaware of any federal case that applies a two-level enhancement for a person deleting or deactivating their own social media. The enhancement is applied when defendants use social media to issue threats or directives to lie.

**Objections:**
1. Mindful of *Alexander*, defendant objects that the statements referenced in the PSR were made prior to any federal involvement and do not apply to the instant offense of conviction.

2. The context of Mr. Lartigue's statements – he was deleting twitter until July 8th – prove he was no longer going to correspond on Twitter. Mr. Lartigue wrote that he wasn't going to comment on his pending arrest – which is certainly what we expect people to do after being arrested for a felony. These are all indications of

proper activity that most people would see as rational. Had Mr. Lartigue instructed others to delete his messages, that would certainly qualify for obstruction of justice. But these are all messages where he is talking about his own actions – not threatening or intimidating or influencing anyone else.

3. Mr. Lartigue was under no court order or bond condition to maintain his social media accounts. Had he received this order and then deactivated his accounts, obstruction of justice may be applicable. But the government's position is that any deleted email, tweet, private text message, or Facebook post that is removed because you've just been arrested and don't want to make matters worse suggest an odd public policy. In fact, when defendants don't remove aspects of criminal involvement and continue those conversations online, prosecutors use this evidence to show lack of remorse and continued criminal involvement. We should encourage and err on the side of repudiation.

☐ **Sustained**.
☐ **Overruled**. The Court adds 2 levels to the Base Offense Level.

---

# OBJECTION NO. 7
Acceptance of Responsibility

**Government/PSR position:**
The defendant "put the government to its burden of proof at trial" and the acceptance of responsibility should be denied.

**Response:**
1. The confluence of events in this case warrant consideration for a trial exception.

2. Well before trial Mr. Lartigue was engaged in actions that demonstrate acceptance and greater attempts to understand himself – like participating in a psychological evaluation with Dr. Stephen Thorne.

3. All data suggests the greatest value of deterrence is belief of apprehension and prosecution. A public trial improves and effectuates the government's function in ways that a guilty plea does not.

☐ **Sustained**. The Court reduces 2 levels from the Base Offense Level.
☐ **Overruled**.